UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

BILLIE FULKERSON,

        Plaintiff,                  Case No. 1:16-cv-537

v.                                             Honorable Robert J. Jonker

HEIDI WASHINGTON et al.,

        Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Campbell and Lambert. The Court will serve the complaint against Defendant Holmes.

**Discussion**

      I.        Factual allegations

Plaintiff Billie Fulkerson presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility. He sues MDOC Director Heidi Washington and the following DRF officials: Warden Sherman Campbell, Dr. Scott Holmes, and Health Unit Manager Todd Lambert.

According to the allegations in the complaint, Plaintiff has a lengthy history of cardiac problems, sleep apnea and diabetes. Among other things, Plaintiff received a second pacemaker in 2006, which was monitored to report his ongoing heart function. Plaintiff was in the care of cardiologists from that time until the end of 2012. In 2011, Plaintiff's cardiologist recommended that he receive a C.T. scan at least twice each year to ensure that his stent had not moved.

On October 8, 2015, Plaintiff was sentenced on multiple counts of criminal sexual conduct, and he subsequently was transferred to the MDOC. He arrived at the Charles Egeler Reception and Guidance Center (RGC) in November 2015. At RGC, Plaintiff received an initial health examination. Plaintiff told the doctor that he was concerned that he did not have his BiPAP (Bilevel Positive Airway Pressure) machine or his telephonic heart monitor. The doctor said that he would look into the situation and that the housing facility to which he would be assigned would address Plaintiff's health concerns.

Approximately one week later, Plaintiff was rushed to Duane Waters Hospital (DWH) for severe chest pain and trouble breathing. When he arrived at DWH, the attending physician determined that Plaintiff should be sent to Foote Hospital in Jackson, Michigan. A cardiologist at Fooote Hospital determined that Plaintiff needed emergency cardiovascular surgery. Plaintiff had

the surgery and remained at Foote Hospital for three days before returning to RGC. Less than one week later, Plaintiff again was rushed to DWH with cardiac symptoms, and he was hospitalized. On the second day of his hospitalization, a DWH doctor told Plaintiff that, because of his health condition, Plaintiff would be admitted to their permanent medical unit. Plaintiff met with a social worker that day to complete the paperwork necessary for admission to the unit. However, later that evening, Plaintiff was taken from the hospital to his cell block, without explanation. Three days later, Plaintiff was transferred to DWH.

When he arrived at DWH, Plaintiff received an initial medical screening from Defendant Holmes. Plaintiff told Holmes about his health concerns and inquired about the telephonic monitor for his pacemaker. Holmes told Plaintiff that he had no knowledge of the device, but he would look into it. Plaintiff contacted his daughter to complain about not receiving the monitor. She stated that she would call the facility. One week later, Plaintiff again called his daughter. She told him that she had picked up the monitor from the Livingston County Jail, where she was told that the MDOC had refused to take the device, as they had their own. In late February 2016, Plaintiff's daughter brought the monitor with her on a visit. An unknown officer took the monitor and told her that he would make sure that it got to the medical department.

During this time, Plaintiff was experiencing chest pain and shortness of breath, and he requested medical visits and referral to a cardiologist. Defendant Holmes denied the referral, instead assigning Plaintiff to monthly cardiac care visits. Plaintiff saw Holmes one month later, and he explained that his symptoms and pain were worse, requiring him to take his nitroglycerine tablets at least three or four times each week. Plaintiff again asked about his monitor, and Holmes again

told Plaintiff that he would look into it. Approximately one week later, after a call by Plaintiff's daughter, the monitor was located in a locker in the visitor area.

Plaintiff filed a grievance on March 1, 2016, in which he complained that he was not receiving proper cardiac care. Defendant Lambert denied the grievance at Step I, concluding that Plaintiff had been examined and was being monitored closely for his diabetes and cardiac conditions. Lambert also concluded that Doctor Holmes had reviewed the medical history and concluded that, at that time, Plaintiff did not require either referral to a cardiac specialist or a medical transfer. Plaintiff appealed the grievance to Steps II and III.

On April 4, 2016, Plaintiff submitted another medical request. Plaintiff again saw health care. He inquired about a CT scan, which he had not had in nearly a year. Plaintiff was returned to his cell block without the desired resolution.

Plaintiff alleges that Defendants have been deliberately indifferent to his serious medical condition, in violation of the Eighth Amendment. He seeks declaratory relief, together with compensatory and punitive damages.

    II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendants Washington and Campbell, other than to claim that they are responsible for managing the facilities and supervising their subordinates.  His only allegation against Defendant Lambert is that Lambert denied his grievance at Step I of the grievance process.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington, Campbell and Lambert engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, Campbell and Lambert will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Holmes.

An Order consistent with this Opinion will be entered.

Dated:   June 27, 2016                  /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE