UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLIE FULKERSON #967488,

    Plaintiff,                              Hon. Robert J. Jonker

v.                                                 Case No. 1:16-cv-537

HEIDI WASHINGTON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendant's Motion for Summary Judgment</u>. (ECF No. 11). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this matter **terminated**.

## BACKGROUND

Plaintiff initiated this action against several prison officials including Dr. Scott Holmes. (ECF No. 1). Plaintiff alleges that Defendants failed to provide him appropriate medical treatment in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff's claims, save his claim against Defendant Holmes, were dismissed on screening. Defendant Holmes now moves for relief on the ground that Plaintiff has failed to properly exhaust his administrative remedies. Plaintiff has failed to respond to Defendant's motion.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an

agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

Defendant has submitted evidence that Plaintiff did, in fact, file a grievance about the matters giving rise to this action. However, this particular grievance fails to properly exhaust Plaintiff's remaining claims for two distinct reasons. First, Plaintiff did not pursue this grievance in accordance with MDOC grievance policy. Second, Plaintiff initiated the present action before completing the MDOC grievance process.

On March 1, 2016, Plaintiff submitted a Step I grievance regarding the alleged failure by Defendant Holmes (and others) to provide him with appropriate medical treatment. (ECF No. 11-1 at PageID.57). Plaintiff's grievance was denied as lacking merit. (ECF No. 11-1 at PageID.58). Plaintiff appealed the matter to Step II of the grievance process, but his grievance was again denied as lacking merit. (ECF No. 11-1 at PageID.55-56). Plaintiff's Step III grievance appeal was not denied for lack of merit, however, but was instead denied because Plaintiff failed to comply with the requirement that "[p]rior to submitting a written grievance, [he] attempt to resolve the issue with the staff member involved." (ECF No. 11-1 at PageID.54-55; Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P). Because Plaintiff failed to pursue this grievance through all three steps of the MDOC grievance process in accordance with MDOC policy, this grievance does not exhaust Plaintiff's remaining claims against Defendant Holmes.

Plaintiff also improperly initiated the present action before completing the prison grievance process. Where an inmate files a civil action in federal court before completing the available administrative processes, his complaint (or certain claims therein) must be dismissed for failure to properly exhaust administrative remedies. *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)

(a prisoner "may not exhaust administrative remedies during the pendency of the federal suit"); *Hopkins v. Ohio Department of Corrections*, 84 Fed. Appx. 526, 527 (6th Cir., Dec. 4, 2003) ("[w]hen a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate" because "[e]xhaustion may not be completed after a federal complaint has been filed"); *Sango v. LeClaire*, 2016 WL 4441532 at *3-4 (W.D. Mich., Aug. 1, 2016) (same). Because Plaintiff initiated the present action before allowing the prison grievance process to be completed, this particular grievance cannot serve to exhaust any of Plaintiff's remaining claims.

According to MDOC policy, "[t]he total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ S. MDOC policy further provides that if prison officials fail to timely respond to a grievance, the inmate may proceed to the next step in the grievance process. *See* Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ T.

In circumstances in which a prisoner initiates legal action prior to receiving a response to his Step III grievance, but after the expiration of the aforementioned 120 day period, the Court has determined that such constitutes proper exhaustion of available administrative remedies. As the Court has observed, to conclude otherwise would permit MDOC officials to easily obtain the dismissal of *every* lawsuit filed by a prisoner who properly complies with the MDOC's grievance policies. MDOC officials would need only ignore every Step III grievance until after the expiration of the 120 day period and simply wait until the prisoner files a lawsuit. Once the prisoner files a lawsuit, MDOC officials could then issue a response to the Step III grievance and claim that the lawsuit must be dismissed

because it was filed before the inmate completed the administrative process. The present circumstance, however, is distinguishable.

Plaintiff initiated this grievance on March 1, 2016. Thus, the administrative grievance process was not properly completed until the sooner of the following: (1) Plaintiff receiving a response to his Step III grievance, or (2) the expiration, on June 29, 2016, of the 120-day grievance response period. When Plaintiff initiated the present lawsuit on May 17, 2016, however, he had neither received a response to his Step III grievance nor had the 120-day period expired. Simply stated, when Plaintiff initiated the present action, the MDOC grievance process had not been completed.

Moreover, the fact that prison officials did not provide a response to Plaintiff's Step III grievance until after the expiration of the 120-day period is irrelevant. As the Sixth Circuit has made clear, whether the grievance process is properly completed after the initiation of legal action is irrelevant. Instead, the relevant question is whether the grievance process has been properly completed at the moment legal action is initiated. Thus, the aforementioned grievance cannot serve to exhaust any of Plaintiff's remaining claims. Accordingly, the undersigned recommends that Defendant's motion be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant's Motion for Summary Judgment</u>, (ECF No. 11), be **granted**; Plaintiff's claims against Defendant Holmes be **dismissed without prejudice for failure to exhaust administrative remedies**; and this matter **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

    Respectfully submitted,

Date:  November 3, 2016

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge